**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

**Brenda Hester and**
**Temmie ("Tim") Hester,**

**Plaintiffs,**

**v.** **Case No. 03-2447-JWL**

**Wal-Mart Stores, Inc.,**

**Defendant.**

**MEMORANDUM & ORDER**

Plaintiff Brenda Hester filed suit against defendant under 42 U.S.C. §§ 1981 and 1982, and for false arrest under state law, based on defendant's wrongful accusation that plaintiff shoplifted merchandise from defendant's store in Atchison, Kansas. Plaintiff Temmie ("Tim") Hester (hereinafter referred to as "Tim Hester") filed suit against defendant under 42 U.S.C. §§ 1981, 1982 and 1983 based on defendant's wrongful detention of plaintiff while he was exiting defendant's store in Atchison, Kansas. Plaintiff Tim Hester also asserts a derivative claim for loss of services sustained as a result of alleged injuries suffered by his wife, plaintiff Brenda Hester. On December 17, 2004, this court entered an order granting summary judgment in favor of defendant on plaintiffs' federal claims and dismissing without prejudice Ms. Hester's state law claim for false imprisonment and Mr. Hester's corresponding loss of services claim. This matter is presently before the court on plaintiffs' motion to alter or amend the judgment (doc. 152). As set forth in more detail below, the motion is granted.

*Background*

In December 2004, this court granted summary judgment in favor of defendant on plaintiffs' federal claims. With respect to plaintiffs' section 1981 claims, the court granted summary judgment (a ruling that applied with equal force to plaintiffs' section 1982 claims) on the grounds that plaintiffs' claims were asserted under the "make and enforce contracts" clause of section 1981 and the uncontroverted facts demonstrated that defendant did not interfere with any contractual relationship. The court granted summary judgment on Mr. Hester's section 1983 claim on the grounds that Mr. Hester failed to come forward with sufficient evidence from which a reasonable jury could conclude that defendant acted under color of state law. The court declined to exercise jurisdiction over Ms. Hester's state law claim for false imprisonment and Mr. Hester's corresponding loss of services claim and it dismissed those claims without prejudice.

In that portion of the order in which the court granted summary judgment on plaintiffs' section 1981 claims, the court observed that plaintiffs, in the pretrial order, made a single reference to the "full and equal benefit of all laws" clause of section 1981. The court stated that it did not believe that plaintiffs had intended to assert a separate section 1981 claim under a "full and equal benefit" theory (particularly in light of the fact that plaintiffs made no reference to that theory in the response to the motion for summary judgment), but invited plaintiffs to file a motion to alter or amend if they did intend to assert such a theory. Thereafter, plaintiffs filed a timely motion to alter or amend in which they contend that both plaintiffs intended to assert such a claim in the pretrial order and that those claims should survive summary judgment. Defendant opposes the motion, asserting that plaintiffs failed to preserve a separate cause of action under the "full and

equal benefit" clause; that even if plaintiffs initially asserted such a theory, plaintiffs abandoned those claims by failing to raise the issue at any point during the litigation or in response to defendant's motion for summary judgment; and that plaintiffs' "full and equal benefit" theory fails as a matter of law because state action is an essential element of the claim and the court has already determined (in connection with Mr. Hester's section 1983 claim) that plaintiffs have failed to come forward with sufficient evidence from which a reasonable jury could conclude that defendant acted under color of state law. The court addresses each of these arguments below.

*The State Action Requirement*

The court begins with defendant's argument that plaintiffs' "full and equal benefit" claims under section 1981 fail as a matter of law because if defendant is correct that state action is required to state a claim under the "full and equal benefit" clause of section 1981, then the court need not address the parties' arguments concerning whether the claims were preserved in the pretrial order and whether those claims were thereafter abandoned. As explained below, however, the court concludes that state action is not required to state a claim under the "full and equal benefit" clause of section 1981. Thus, the fact that the court has previously determined that defendant did not act under color of state law has no bearing on whether plaintiffs can proceed with their section 1981 claims.

In analyzing defendant's argument that state action is required to state a claim under the "full and equal benefit" clause of section 1981, the court looks to the language of the statute itself, both in its original form and as amended in 1991. Prior to 1991, section 1981 provided, in its

entirety:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981.

Congress amended the statute in 1991. The paragraph quoted above became subsection (a). Congress added a new subsection (b), which legislatively overrules the Supreme Court's decision in *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989), and makes clear that the protections of section 1981 extend to all aspects of the contractual relationship, not just the initial formation of contracts or the right to enforce contract obligations through legal process. Finally, Congress added a new subsection (c), the subsection that is relevant to defendant's argument. Subsection (c) provides: "The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c).

On its face, subsection (c) clearly indicates that state action is not required for a section 1981 claim. Subsection (c) refers, without limitation, to "the rights protected by this section" and states that those rights are "protected against impairment by nongovernmental discrimination." As the parties acknowledge, however, the Tenth Circuit has yet to address the issue of whether state action is required to state a claim under the "full and equal benefit" clause and there is conflicting authority from those Circuit Courts of Appeals that have addressed the issue.

Defendant relies on cases from the Third, Fourth, and Eighth Circuits holding that state action is an implied element of any "full and equal benefit" claim. *See Bediako v. Stein Mart, Inc.*, 354 F.3d 835 (8th Cir. 2004); *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851 (8th Cir. 2001); *Jones v. Poindexter*, 903 F.2d 1006 (4th Cir. 1990); *Mahone v. Waddle*, 564 F.2d 1018 (3rd Cir. 1977). Of the cases cited by the defendant, *Mahone* was the first to articulate the implied state action requirement and subsequent Circuit decisions have relied upon *Mahone* to find a state action requirement.

In *Mahone*, the Third Circuit held that police officers who physically and verbally abused African-Americans, falsely arrested them, and gave false testimony against them, could be sued under section 1981's "full and equal benefit" clause. *Mahone*, 564 F.2d at 1028–29. The defendants in the case argued that if section 1981 were construed to encompass their actions, tort law would become federalized. *Id.* at 1029. The Third Circuit dismissed the argument by noting that no such danger exists, because the "full and equal benefit" clause requires state action. *Id.* The court acknowledged that the "make and enforce contracts" clause of section 1981 has no state action requirement. It distinguished the "make and enforce contracts" clause from the "full and equal benefit" clause by noting that it is individuals who ordinarily make contracts and thus, it is proper to hold them liable for the racially motivated infringement of contracts they make. *Id.* Conversely, the court said that the "full and equal benefit" clause necessarily implies state action, "suggest[ing] a concern with relations between the individual and the state, not between two individuals." *Id.*

Significantly, *Mahone* was decided in 1977, prior to the adoption of subsection (c).

Defendant, however, also cites portions of a dissent from the more recent Sixth Circuit case, *Chapman v. Higbee Co.*, 319 F.3d 825 (6th Cir. 2003), arguing that state action is required even after the 1991 amendment. The arguments made by the dissent in *Chapman* were first made as part of a panel opinion holding that state action was required. *See Chapman v. Higbee Co.*, 270 F.3d 297 (6th Cr. 2001). The initial *Chapman* decision was reversed by the court *en banc*, holding that state action is not required. *See* 319 F.3d at 833. In the *Chapman* panel decision, the court found that the nongovernmental discrimination component of subsection (c) was meant to apply only to the rights protected by the "make and enforce contracts" clause. 270 F.3d at 421. The court argued that to hold otherwise would have "the absurd result of federalizing state tort law." *Id.* The court also relied upon a brief statement of legislative history accompanying subsection (c), wherein the congressional committee stated that the subsection was intended to "prohibit racial discrimination in all contracts, both public and private." *See* H. Rep. No. 102-40, pt. II, at 37 (1991).

The Eighth Circuit appears to be the only circuit that has specifically maintained the state action requirement after the 1991 amendment. *See Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851 (8th Cir. 2001). Since 1991, two circuits have held that state action is not required. *See Phillip v. University of Rochester*, 316 F.3d 291, 298 (2d Cir. 2003); *Chapman*, 319 F.3d at 833. Furthermore, the Fifth Circuit permitted a section 1981 "full and equal benefit" claim against a private actor well before the 1991 amendment. *See Jennings v. Patterson*, 488 F.2d 336, 441–42 (5th Cir. 1974). In a case from this district, *Lee v. Brown Group Retail, Inc.*, 2003 WL 22466187, at *3-4 (D. Kan. Oct. 6, 2003), Judge VanBebber reviewed the split of authority on the

state action issue and found, like the majority of circuits addressing the issue since 1991, that state action is not required.

This court believes that the Tenth Circuit would hold that state action is not required to state a "full and equal benefit" claim under section 1981. In that regard, the court finds particularly persuasive the reasoning offered by the Second Circuit in *Phillip v. University of Rochester*. *See* 316 F.3d 293–98. The state is not the only actor that can deprive an individual of the benefit of laws or proceedings for the security of persons or property. *Id.* at 295. As the Second Circuit noted, a full reading of the legislative history behind section 1981 indicates that Congress was very much concerned about private acts motived by racial discrimination. *Id*. The impact of the legislative history was aptly described by the Second Circuit as follows: "[T]he extensive description of racial abuses that individuals perpetrated, coupled with the Senate sponsor's broad view of the legislation's aims, persuades us that we should read section 1981 as broadly as is consistent with the actual language of each clause." *Id.* at 296.

Even if Congress did not originally intend that section 1981 provide protection from the conduct of private actors, the 1991 amendment makes abundantly clear that there is no state action requirement. Subsection (c) states that it applies "to the rights protected by this section." 42 U.S.C. § 1981(c). The plain meaning of this provision must be that subsection (c) applies to section 1981 in its entirety, not merely the "make and enforce contracts" clause. Furthermore, it was clearly established before 1991 that the "make and enforce contracts" clause applies to solely private conduct. *Phillip*, 316 F.2d at 293. The reading of subsection (c) proposed by defendant, then, renders that section superfluous.

In sum, consistent with the majority of Circuits that have addressed the issue and because a plain reading of subsection (c) indicates that the conduct of private actors is actionable under the "full and equal benefit" clause of section 1981, this court determines that state action is not a required element of a "full and equal benefit" claim. The court turns, then, to analyze whether plaintiffs have preserved their "full and equal benefit" claims in the pretrial order and, if so, whether plaintiffs thereafter abandoned those claims.

*Whether Plaintiffs Preserved "Full and Equal Benefit" Claims in the Pretrial Order*

In their motion to alter or amend, plaintiffs urge that they preserved in the pretrial order claims under the "full and equal benefit" clause of section 1981. Defendant contends that plaintiffs did not preserve such claims and, even assuming plaintiffs preserved such claims, plaintiffs thereafter abandoned these claims by failing to raise the claims at any time during the litigation process or in the summary judgment context. As explained more fully below, while this case presents a very close question in terms of whether plaintiffs' "full and equal benefit" claims were preserved in the pretrial order, the court ultimately concludes that plaintiffs adequately preserved their claims and did not abandon those claims at any point after the entry of the pretrial order.

The starting point of the court's analysis is, of course, the language of the pretrial order itself. In that regard, the "Nature of the Case" section, appearing on the first page of the thirty-seven (37) page order, states in general terms that plaintiff Tim Hester is asserting "claims for violations of 42 U.S.C. §§ 1981, 1982, and 1983, and plaintiff Brenda Hester [is] assert[ing]

claims for violations of 42 U.S.C. §§ 1981 and 1982, as well as associated state law claims." This section, then, does not limit plaintiffs' section 1981 claims as arising under any particular clause of section 1981. While plaintiffs' factual contentions indicate that plaintiffs are seeking relief under the "make and enforce contracts" clause of section 1981, plaintiffs specifically reference the "full and equal benefit" clause in the section of the pretrial order entitled "Theories of Recovery and Affirmative Defenses." Under "Plaintiffs' Theories of Recovery," plaintiffs assert as follows:

> Wal-Mart and its managers, agents, and employees deprived Tim Hester and Brenda Hester of the full and equal benefits of all laws and proceedings for the security of persons and property as are enjoyed by Caucasian citizens, in violation of 42 U.S.C. § 1981 (see Counts I and VI of complaint).

Counts I and VI of plaintiffs' complaint, in turn, specifically reference the "full and equal benefit" clause. By contrast, plaintiffs' complaint makes no reference to the "make and enforce contracts" clause. When plaintiffs flesh out their section 1981 claims in more detail by identifying the "essential elements" of their section 1981 claims, plaintiffs assert that they must prove "that the discrimination interfered with one or more of the activities enumerated in § 1981, to wit: the right to make and enforce contracts and enjoy the benefits, privileges, terms, and conditions thereof." Plaintiffs identify as an "issue of fact" whether plaintiffs' rights "to make and enforce a contract with Wal-Mart [were] violated by the alleged conduct of Wal-Mart." However, plaintiffs identify as an "issue of law" whether "Wal-Mart's employees interfered with plaintiffs' § 1981 enumerated

rights."[1]

The pertinent parts of the pretrial order, then, are ambiguous as to whether plaintiffs have asserted a section 1981 claim under the "full and equal benefit" clause and both parties share responsibility. Without question, plaintiffs should have carefully and clearly fleshed out their "full and equal benefit" claim by specifying the factual basis for those claims so that it was clear that plaintiffs were asserting a section 1981 claim pursuant to both the "make and enforce contracts" clause as well as the "full and equal benefit" clause. *See Wilson v. Muckala*, 303 F.3d 1207, 1216 (10th Cir. 2002). They have not done so in this case. By the same token, it is incumbent upon defendant, as the opposing party, to meticulously examine the pretrial order and take exception to language that appears to add a new claim, to assert a claim that defendant believes was not previously asserted in the lawsuit, or is ambiguous in that regard. *See id.* Here, plaintiffs expressly referenced the "full and equal benefit" clause in the pretrial order and defendant did not object to this language or otherwise query whether plaintiffs intended to assert a claim under that clause separate from its "make and enforce contracts" claim. Moreover, the fact that similar language appeared in plaintiffs' complaint should have alerted defendant to the possibility that plaintiffs were pursuing claims under that clause.

Ultimately, the clear language of plaintiffs' complaint, coupled with the express reference

---

[1]While defendant objected to this issue of law, it did so on the grounds that plaintiffs failed to provide sufficient "factual details"–an objection that Judge O'Hara properly overruled as plaintiff is not required to provide factual detail with respect to an issue of law. An appropriate objection to this issue of law would have been that plaintiffs failed to specify the rights enumerated in section 1981 with which defendant's conduct allegedly interfered.

to the "full and equal benefit" clause in the pretrial order, lead the court to conclude that there is sufficient documentary support for the assertion of "full and equal benefit" claims against defendant. *Compare id.* (finding insufficient documentary support for claim where claim did not appear in amended complaint and pretrial order was ambiguous). Admittedly, the court's conclusion runs contrary to some extent to this district's approach to the preparation of pretrial orders–an approach that encourages parties to use great detail in drafting so that the parties (and the trial judge) know what issues will be resolved at trial and, conversely, what issues are not "on the table."[2] In fact, if the issue of whether plaintiffs had preserved a "full and equal benefit" claim had surfaced during trial (assuming other claims had proceeded to trial), the court would not have permitted plaintiffs to pursue those claims in light of the significant degree of prejudice that defendant would have suffered at that juncture if it truly did not appreciate that plaintiffs were asserting this claim. At this stage, however, there is no prejudice to defendant, aside from having to continue to litigate a claim that it contends was simply never a part of this case (despite the fact that the claim was expressly identified in plaintiffs' complaint). This case is not presently set for trial and plaintiffs' "full and equal benefit" claims will require little, if any, additional discovery. The absence of prejudice to defendant is a substantial factor weighing in favor of construing the pretrial order as the court does.

Having concluded that plaintiffs adequately preserved in the pretrial order their claims

---

[2]The interest in the preparation of such orders, however, is outweighed by society's interest in resolving on the merits claims asserting civil rights violations particularly where, as here, the pretrial order is not silent as to the claims but contains an express reference to the statutory language on which the claims are based.

under the "full and equal benefit" clause of section 1981, the court turns to defendant's argument that plaintiffs thereafter abandoned those claims by failing to raise the claims at any point during the litigation and by failing to raise the claims in response to defendant's motion for summary judgment. The court rejects this argument. As an initial matter, it is unclear how plaintiffs would have "raised" these claims during the discovery process or any time prior to the summary judgment context other than by asserting the claims in their initial complaint, which they clearly did. While the court agrees with defendant that counsel for plaintiffs should have mentioned these claims in response to defendant's motion for summary judgment (if only to note for the benefit of the court that defendant had not moved for summary judgment on plaintiffs' "full and equal benefit" claims), the court cannot conclude that plaintiffs abandoned those claims when defendant, in its turn, did not expressly seek summary judgment on those claims. While defendant urges that it sought summary judgment on all claims raised by plaintiff, the specific arguments contained in defendant's memorandum in support focused only on the contract aspect of plaintiffs' section 1981 claims and the issue of "intentional" discrimination. In other words, the court could not grant summary judgment on plaintiffs' "full and equal benefit" claims simply because defendant sought summary judgment on "all" claims; defendant was required to articulate the specific reasons why it was entitled to summary judgment on all claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion").

*Next Steps*

While defendant essentially moves for summary judgment on plaintiffs' "full and equal benefit" claims in response to the motion to alter or amend, none of the parties have adequately analyzed the claims for purposes of summary judgment (which is understandable in light of the procedural posture of these claims). For this reason, the court believes that the parties would benefit by having one or more supplemental pretrial conferences before Magistrate Judge O'Hara and by preparing a new pretrial order limited to plaintiffs' "full and equal benefit" claims under section 1981 and Ms. Hester's false imprisonment claim, as the court dismissed that claim without prejudice in light of its dismissal of Ms. Hester's section 1981 claim.[3] Toward that end, plaintiffs should first be required to articulate with specificity the factual basis for their "full and equal benefit" claims. After defendant has had an opportunity to consider the factual basis set forth by plaintiffs, defendant should advise Magistrate Judge O'Hara whether it believes that additional discovery is necessary for the limited purpose of permitting defendant to ascertain more clearly the nature of plaintiffs' "full and equal benefit" claims. If defendant does believe that additional discovery is necessary, then Judge O'Hara shall determine whether to permit such discovery, taking into consideration whether the specific discovery requested should have been conducted during the initial discovery period in light of the fact that plaintiffs' complaint clearly set forth a "full and equal benefit" claim under section 1981. If Judge O'Hara is persuaded that

---

[3]The court also dismissed plaintiffs' section 1982 claims because section 1981 and section 1982 are generally construed in tandem. In their motion to alter or amend, however, plaintiffs do not seek reinstatement of their section 1982 claims. Nor do plaintiffs seek reinstatement of Mr. Hester's loss of services claim. These claims, then, are not proper subjects of the supplemental pretrial order.

defendant, in the interests of justice and in light of the fact that this court gave plaintiffs the benefit of the doubt in construing the pretrial order, should be permitted to conduct additional, limited discovery, then Judge O'Hara shall establish a deadline for that discovery. The parties should also consider whether they intend to reassert any motions that were rendered moot by this court's summary judgment order, including motions concerning expert testimony and for separate trials, deadlines for the filing of which should also be established.

Finally, the court sets this case for trial on its October 2005 trial calendar (the next calendar on which the court is able to try this case), a calendar which begins on October 11, 2005. Judge O'Hara, then, should set a dispositive motion deadline that is no later than June 13, 2005.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's motion to alter or amend (doc. #152) is **granted**. The judgment entered on December 17, 2004 (doc. 151) is hereby **vacated** and this case is reopened. The parties are directed to contact Magistrate Judge O'Hara's chambers for the purpose of scheduling a supplemental pretrial conference as described in this order.

**IT IS FURTHER ORDERED BY THE COURT THAT** this case is set for trial on the court's October 2005 trial calendar which begins October 11, 2005.

**IT IS SO ORDERED.**

Dated this 16th day of February, 2005, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge