IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**Brenda Hester and**
**Temmie ("Tim") Hester,**

        **Plaintiffs,**

**v.**                                                               **Case No. 03-2447-JWL**

**Wal-Mart Stores, Inc.,**

        **Defendant.**

### MEMORANDUM & ORDER

Plaintiff Brenda Hester filed suit against defendant under 42 U.S.C. § 1981 and for false imprisonment under state law based on defendant's wrongful accusation that plaintiff shoplifted merchandise from defendant's store in Atchison, Kansas. Plaintiff Temmie ("Tim") Hester (hereinafter referred to as "Tim Hester") filed suit against defendant under 42 U.S.C. § 1981 based on defendant's wrongful detention of plaintiff while he was exiting defendant's store in Atchison, Kansas.[1] This matter is presently before the court on defendant's motion for summary judgment (doc. 169). As set forth in more detail below, the motion is granted in part and denied in part. Specifically, the motion is granted with respect to Mr. Hester's claim and is denied with respect to Ms. Hester's claims.

---

[1]Plaintiffs previously asserted additional claims against defendant and the court has granted summary judgment on these claims, as explained in more detail in part II of this order.

**I.     Facts**

The following facts are either uncontroverted or related in the light most favorable to plaintiffs, the nonmoving parties. The claims of both plaintiffs, who are husband and wife, arise out of plaintiffs' separate shopping trips to defendant's store in Atchison, Kansas.

On August 5, 2002, four African-American individuals (three male, one female) were involved in a joint effort to shoplift merchandise from defendant's store in Atchison, Kansas. Derrick Dye, defendant's Loss Prevention Associate, was monitoring the activity of these four individuals. While he was monitoring these four individuals, Mr. Dye contacted another Wal-Mart employee via two-way radio and asked that employee to contact the Atchison police to assist in apprehending the four individuals. The Atchison police were called to the scene. During this same time frame, plaintiff Tim Hester entered the store for the purpose of making an initial down payment on a layaway agreement for the purchase of certain stereo equipment. Once inside the store, Mr. Hester proceeded directly to the layaway counter where he made his payment. By this time, the four suspects had made their way to the layaway area. Mr. Dye was still monitoring the suspects.

Mr. Hester then left the layaway area and proceeded to the store's exit. As Mr. Hester was leaving the layaway area, one of defendant's assistant managers observed Mr. Hester and, knowing that three African-American males were engaged in shoplifting activity in the store and were positioned in the layaway section, contacted Mr. Dye via two-way radio, described Mr. Hester to Mr. Dye and asked Mr. Dye whether the individual leaving the layaway area was one of the individuals involved in the theft. Mr. Dye responded that the individual described by the assistant

manager was not involved in the theft and should not be stopped.[2]

Shortly thereafter, some or all of the African-American shoplifting suspects exited the store followed by Mr. Dye. During this same time frame, Mr. Hester also exited the store. Within minutes, two Atchison police officers, Kory Webb and John Laurie, arrived at the store. Officers Webb and Laurie both aver that when they arrived at the store, several African-American males were standing near the store's entrance and that Mr. Dye was also near the store's entrance. The record reveals that Mr. Hester was standing near or among the group of suspects. According to the officers, Mr. Dye pointed to the group of African-Americans, including Mr. Hester, and advised the officers to arrest all of the individuals for shoplifting. Both officers specifically aver that Mr. Dye, without question, designated Mr. Hester as one of the individuals who should be placed under arrest for shoplifting. The officers escorted the group of individuals back inside the store and, within minutes thereafter, Mr. Hester was released, based primarily on Mr. Dye's immediate assertion that Mr. Hester was not involved in the shoplifting activity.

One month later, on September 5, 2002, plaintiff Brenda Hester was shopping in the Atchison Wal-Mart store with her teenage daughter and a toddler. At some point during her shopping trip, Ms. Hester stopped in the shoe department and began trying several pairs of shoes on the toddler. Ultimately, Ms. Hester placed two pairs of shoes in her shopping cart and, shortly thereafter, placed one of those pairs on the toddler to wear. Ms. Hester testified that the price tag

---

[2]While Mr. Hester purports to controvert this fact, he directs the court to no evidence from which a jury could infer that Mr. Dye did not initially advise the assistant manager that the individual exiting the layaway area should not be stopped.

3

fell off the pair of shoes while the shoes were being placed on the toddler's feet and that she carried the price tag with her in full view at all times. During this time, Derrick Dye was observing Ms. Hester and her conduct. According to defendant, Mr. Dye was watching Ms. Hester because she fit the description of a "known" shoplifter. Mr. Dye testified that Ms. Hester placed the price tag from the shoes into her pocket. Mr. Dye then followed Ms. Hester and her shopping party to the checkout aisle. Although Mr. Dye was standing very near Ms. Hester while she was checking out, he lost sight of Ms. Hester for a period of time while he was advising one of defendant's assistant managers of the "situation." Ms. Hester paid for all of her merchandise, including the shoes that the toddler was wearing. According to defendant, Mr. Dye did not see Ms. Hester pay for the shoes that the toddler was wearing. Plaintiff asserts that Mr. Dye must have seen Ms. Hester pay for the shoes as he was standing right behind her in line.

In any event, as Ms. Hester was leaving the store, Mr. Dye grabbed her by the arm and accused her of stealing a pair of shoes. He asked her to return to the store and she refused, advising Mr. Dye that he was mistaken and that she had not stolen any merchandise. Mr. Dye then followed Ms. Hester into the parking lot, repeated his accusation that she had stolen merchandise, and again asked her to return to the store. Ms. Hester again refused to return to the store and advised Mr. Dye for the second time that he was mistaken. According to Ms. Hester, Mr. Dye then "jumped in front" of her and told her that he "could not let her leave" because she had shoplifted items from the store. At that point, Ms. Hester became upset and told Mr. Dye that he was "going to have to call the police or something." Ms. Hester alleges that Mr. Dye repeatedly called her a liar during their confrontation. The police were contacted and arrived within ten minutes.

4

Ultimately, it was confirmed that Ms. Hester had not stolen any merchandise. Shortly thereafter, Ms. Hester went back into the store to return all of the merchandise for a full refund.

Plaintiffs have secured the services of various experts who opine that both plaintiffs were the victims of racial profiling and that Mr. Dye detained both plaintiffs on the basis of their race.[3] Additional facts will be provided as they relate to plaintiffs' particular claims.

## II.    Procedural History

Ms. Hester initially filed suit against defendant under 42 U.S.C. §§ 1981 and 1982 and for false imprisonment under state law. Mr. Hester asserted claims under 42 U.S.C. §§ 1981, 1982 and 1983 as well as a derivative claim for loss of services sustained as a result of alleged injuries suffered by his wife. In December 2004, this court granted summary judgment in favor of defendant on plaintiffs' federal claims. With respect to plaintiffs' section 1981 claims, the court granted summary judgment (a ruling that applied with equal force to plaintiffs' section 1982 claims) on the grounds that plaintiffs' claims were asserted under the "make and enforce contracts" clause of section 1981 and the uncontroverted facts demonstrated that defendant did not interfere with any contractual relationship. The court granted summary judgment on Mr. Hester's section 1983 claim on the grounds that Mr. Hester failed to come forward with sufficient evidence from which a reasonable jury could conclude that defendant acted under color of state

---

[3]The court declines to decide at this juncture whether the opinions of plaintiffs' experts would assist the trier of fact at trial and the opinions of plaintiffs' experts have no bearing on the court's resolution of defendant's motion for summary judgment.

5

law. The court declined to exercise jurisdiction over Ms. Hester's state law claim for false imprisonment and Mr. Hester's corresponding loss of services claim and it dismissed those claims without prejudice.

In that portion of the order in which the court granted summary judgment on plaintiffs' section 1981 claims, the court observed that plaintiffs, in the pretrial order, made a single reference to the "full and equal benefit of all laws" clause of section 1981. The court stated that it did not believe that plaintiffs had intended to assert a separate section 1981 claim under a "full and equal benefit" theory (particularly in light of the fact that plaintiffs made no reference to that theory in the response to the motion for summary judgment), but invited plaintiffs to file a motion to alter or amend if they did intend to assert such a theory. Thereafter, plaintiffs filed a timely motion to alter or amend in which they argued that both plaintiffs intended to assert such a claim in the pretrial order and that those claims should survive summary judgment. The court granted the motion and permitted plaintiffs to proceed on this claim as well as Ms. Hester's state law claim for false imprisonment.[4] Defendant now moves for summary judgment on these claims.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. C`iv. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences

---

[4]Plaintiffs did not seek reinstatement of their section 1982 claims or Mr. Hester's loss of services claim.

therefrom in the light most favorable to the nonmoving party. *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. of Kansas v. Abbott Laboratories, Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler,* 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Spaulding*, 279 F.3d at 904 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adams v. American Guarantee & Liability Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001). Rather, the nonmoving party must "set forth specific facts that

would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1197-98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671). To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibits incorporated therein." *Adams,* 233 F.3d at 1246.

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and in-expensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1); *see also Kaster v. Safeco Ins. Co. of Am.*, 2003 WL 22854633, at *2 (10th Cir. Dec. 3, 2003) (affirming the district court's grant of summary judgment in favor of defendant in an ADEA case where the plaintiff had failed to present evidence sufficient for a reasonable jury to conclude that Safeco's employment decisions were age-related); *Young v. White*, 2003 WL 21940941, at *1-2 (10th Cir. Aug. 14, 2003) (affirming district court's grant of summary judgment in favor of defendant in race discrimination and retaliation context).

## IV. Plaintiffs' Section 1981 Claims

According to plaintiffs, defendant violated 42 U.S.C. § 1981 when it, through its agent Derrick Dye, detained them and, in the case of Ms. Hester, wrongfully accused her of shoplifting. As amended by the Civil Rights Act of 1991, section 1981 reads, in pertinent part, as follows:

> (a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings

> for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kinds, and to no other.

42 U.S.C. § 1981(a). To establish a claim of discrimination under section 1981, plaintiffs must show that they are members of a protected class; that defendant had the intent to discriminate on the basis of race; and that the discrimination interfered with a protected activity as defined in section 1981. *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1101-02 (10th Cir. 2001).[5] Defendant contends that summary judgment is warranted on plaintiffs' section 1981 claims because plaintiffs cannot establish that defendant engaged in intentional discrimination on the basis of race. For the reasons set forth below, the court agrees that Mr. Hester cannot establish the second element of his case, nor can he raise a genuine issue of material fact precluding summary judgment. Ms. Hester, however, has raised genuine issues of material fact sufficient to withstand summary judgment on her section 1981 claim.

*A.   Tim Hester*

The court begins with Mr. Hester's claim. Defendant moves for summary judgment on the grounds that there is simply no evidence that Wal-Mart or, more specifically, Mr. Dye

---

[5] Here, plaintiffs allege that defendant interfered with their right to the "full and equal benefit of all laws and proceedings for the security of persons and property." Defendant moves for summary judgment on plaintiffs' "full and equal benefit" claims only on the grounds that plaintiffs have failed to come forward with evidence of intentional discrimination. Defendant does not challenge whether the alleged discrimination in this case interfered with plaintiffs' rights to the "full and equal benefit of all laws and proceedings for the security of persons and property."

9

intentionally discriminated against Mr. Hester on the basis of his race. Plaintiff, on the other hand, urges that the undisputed facts show that Mr. Dye advised the officers to detain Mr. Hester based solely on the fact that Mr. Hester was the same race as the suspects. Indeed, plaintiff's experts have opined that Mr. Hester was detained based solely on his race and that he was the victim of "racial profiling" on the part of Mr. Dye.[6] According to Mr. Hester, then, the fact that he was identified as a shoplifter based solely on his race is sufficient to show the requisite intentional discrimination. As explained below, even assuming that Mr. Dye identified Mr. Hester for arrest based solely on his race, Mr. Hester cannot state a claim of intentional discrimination under section 1981.

As the Tenth Circuit has explained, the "essential legal requirement of an *intent* to *discriminate*" for purposes of section 1981 invokes two interlinked principles. *See Roe ex rel. Roe v. Keady*, 329 F.3d 1188, 1191 (10th Cir. 2003) (emphasis in original). The first principle is "the requirement of *intentional* conduct." *See id.* (emphasis in original). The second principle is the requirement that the conduct be "imbued with or directed toward an impermissible

---

[6]While the court declines to decide at this juncture whether the opinions of plaintiffs' experts would assist the trier of fact at trial, the court notes that the undisputed facts show that Mr. Hester was not the victim of "racial profiling" as that phrase is defined by plaintiffs' experts. Mr. Stephenson, for example, states in his report that "racial profiling" occurs when a security officer places an individual under surveillance based entirely on that individual's "color rather than conduct." Mr. Stephenson further explains that African-Americans refer to racial profiling as "shopping while black." Mr. Hester was not under surveillance at any time during his visit to Wal-Mart and at no time did Mr. Dye monitor Mr. Hester's activities in the store. To the extent plaintiffs' experts opine that Mr. Hester was identified for arrest based solely on his race, even assuming the experts are correct, Mr. Hester has still failed to establish that he was the victim of "intentional discrimination" as explained in the text of this opinion.

*discriminatory* purpose, which 'implies more than intent as volition or intent as awareness of consequences'" and, instead, "'implies that a decisionmaker singled out [the plaintiff] for disparate treatment and selected [t]his course of action at least in part *for the purpose of causing its adverse effects.*'" *See id.* at 1192 (emphasis and alterations in original) (citations omitted).

Mr. Hester's evidentiary showing is deficient with respect to both principles described by the Circuit in *Roe*. Viewed in the light most favorable to Mr. Hester, the facts demonstrate that when Mr. Dye directed the officers to arrest the group of individuals standing near the store's entrance (a group that included some or all of the African-American individuals whom Mr. Dye had been monitoring and who undisputedly were engaged in shoplifting activity), he mistakenly identified Mr. Hester for arrest, who was standing near or among the group. There is simply no evidence that Mr. Dye intentionally identified Mr. Hester for arrest. Rather, the uncontroverted facts demonstrate that Mr. Dye did not intend to have Mr. Hester stopped at all. In that regard, Mr. Dye expressly advised the assistant manager that Mr. Hester should not be stopped and, upon realizing that a mistake had been made, called for the immediate release of Mr. Hester. Similarly, there is no evidence that Mr. Hester possessed any distinguishing characteristics from the group of African-American males (for example, that he was considerably shorter than any of the suspects; that he was wearing a bright red t-shirt while the suspects were all dressed in blue, etc.) such that Mr. Dye immediately should have recognized upon observing the group standing near the entrance that Mr. Hester was not one of the suspects. At the most, these facts demonstrate negligence on the part of Mr. Dye.

As the Circuit emphasized in *Roe*, however, "mere negligence or mistake" does not

11

implicate a claim for intentional discrimination. *See id.* at 1191-92. Mr. Hester has set forth no facts from which a jury could infer that Mr. Dye intentionally identified Mr. Hester for arrest. Thus, no jury could reasonably infer that Mr. Dye's conduct with respect to Mr. Hester was "intentional" for purposes of section 1981 and summary judgment is appropriate on this claim. *See id.* (affirming district court's grant of summary judgment on section 1981 claim where defendants' refusal to provide child welfare and assessment services was based on mistaken belief that plaintiff, in light of his Native American ancestry, had to be referred to the Bureau of Indian Affairs; discrimination claim was not implicated based on defendants' error in concluding that they had to defer to BIA).

Moreover, to the extent that some degree of intentional conduct is involved here (as Mr. Dye either intentionally pointed to a group of individuals that happened to include Mr. Hester or intentionally pointed to Mr. Hester based on his race and the fact that he was standing near or among the true shoplifting suspects who were also African-American), summary judgment is still warranted because Mr. Hester has not raised a triable issue on the second principle described above. Simply put, there is no evidence that Mr. Dye engaged in "objectively invidious discrimination" with respect to Mr. Hester or otherwise intended to disadvantage Mr. Hester. *See id.* at 1192-93 (requisite intent for purposes of section 1981 is intent one that reflects "objectively invidious discrimination"). On its face, Mr. Dye's conduct reflects an effort to detain several African-American individuals who, as acknowledged by Mr. Hester, were shoplifting merchandise from defendant's store. While endeavoring to ensure the arrest of these offenders,

12

Mr. Dye inadvertently identified Mr. Hester for arrest.[7]  Nothing in the record reflects that Mr. Dye purposefully singled out Mr. Hester and identified him for arrest for the purpose of "causing its adverse effects" on Mr. Hester.

For the foregoing reasons, then, summary judgment is granted on Mr. Hester's section 1981 claim and his claim is dismissed with prejudice.[8]

B.   *Brenda Hester*

The court turns, then, to Ms. Hester's section 1981 claim.  Defendant asserts that summary judgment is appropriate as Ms. Hester has come forward with no evidence that Mr. Dye intentionally discriminated against Ms. Hester at any time during her September 5, 2002 visit to Wal-Mart.  According to defendant, Mr. Dye initially began monitoring Ms. Hester because she fit the description of a known shoplifter and was engaged in suspicious activity and he ultimately detained Ms. Hester based on his reasonable belief that she had stolen merchandise.  Defendant suggests that these facts preclude a finding that Mr. Dye monitored or detained Ms. Hester on the basis of her race.  As explained below, the court disagrees; Ms. Hester has set forth sufficient facts from which a jury could reasonably conclude that Mr. Dye intentionally discriminated against

---

[7]Mr. Hester asserts that Mr. Dye, in an overzealous effort to detain the actual suspects, "ordered that any black person attempting to leave the store be detained."  The record contains no evidence whatsoever to support this assertion.

[8]The court's ruling with respect to Mr. Hester's claim moots the pending motion to sever claims and for separate trials (doc. 81).

13

Ms. Hester on the basis of her race.

Defendant urges that Mr. Dye initially began watching Ms. Hester in the store because she fit the description of a known shoplifter. There are facts in the record, however, from which a jury could determine that Mr. Dye did not begin monitoring Ms. Hester for this reason. The known shoplifter was described by Mr. Dye as an overweight, African-American female who generally shops with an infant, shops in the clothing department, is "very vulgar" at times and harasses Wal-Mart associates. The record reflects that Ms. Hester was shopping with a toddler in the shoe department at the time Mr. Dye began monitoring her activity. She had not exhibited any vulgar or harassing conduct. Moreover, on the day of the incident, Mr. Dye completed a report in which he suggests that he initially began monitoring Ms. Hester because she was acting in a "suspicious manner."[9] In his report, Mr. Dye makes no reference to Ms. Hester matching the description of a known shoplifter. Finally, Wal-Mart policy requires a loss prevention associate to notify a member of management if he or she observes a known shoplifter on the premises. Mr. Dye did

---

[9]Mr. Dye's report is attached to plaintiffs' summary judgment response as Exhibit D. Defendant moves to strike this exhibit, as well as Exhibits K, M and N, from plaintiffs' response, contending that the exhibits are not competent summary judgment evidence under Local Rule 56.1(d). In response, plaintiffs have withdrawn Exhibit K (which the court did not rely upon in any event) and have moved to supplement the record with references to the particular deposition excerpts wherein Exhibits D, M and N were incorporated and identified. Plaintiffs' motion is granted and defendant's motion is denied. The deposition exhibits, as supplemented by plaintiffs, are proper Rule 56 evidence. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (in summary judgment context, facts "from which a rational trier of fact could find for the nonmovant . . . must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein"). The court notes, however, that it has not relied on Exhibits M or N (reports of plaintiffs' experts) in analyzing Ms. Hester's claims.

not notify management when he first observed Ms. Hester; he notified management only after Ms. Hester was in the check-out aisle paying for her merchandise. For these reasons, a reasonable jury could conclude that Mr. Dye began watching Ms. Hester not because she matched the description of a known shoplifter, but because of her race. *See Salguero v. City of Clovis*, 366 F.3d 1168, 1176 (10th Cir. 2004) (section 1981 plaintiff can show pretext with evidence that the defendant's stated reason for its action was false and if plaintiff comes forward with such evidence, summary judgment must be denied); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.") (citation omitted); *Hampton*, 247 F.3d at 1108-09 ("discriminatory surveillance . . . can certainly be viewed as indirect evidence of discrimination").

Defendant asserts that Mr. Dye detained Ms. Hester based on his reasonable belief that she had stolen merchandise. A jury, however, could conclude that Mr. Dye had no reasonable basis whatsoever to conclude that Ms. Hester had stolen merchandise. Stated another way, a jury could find Mr. Dye's "reasonable suspicion" theory pretextual. Although Mr. Dye testified in his deposition that he had observed Ms. Hester place the price tag from the shoes in her pocket and that he thought this conduct was suspicious, Ms. Hester testified that she carried the price tag in full view at all times. Mr. Dye did not witness Ms. Hester attempt to conceal any merchandise at any time. Mr. Dye admittedly was not watching Ms. Hester while she paid for her items. A jury

15

could conclude, then, that he detained her on his assumption that she had stolen the shoes–an assumption based not on facts but on her race. Summary judgment, then, must be denied. *See Hampton*, 247 F.3d at 1108 (where retailer asserted that officer had probable cause to detain plaintiff, jury could have concluded that probable cause theory was pretextual and, thus, could have inferred that retailer intentionally discriminated against plaintiff on the basis of her race).[10]

### V.     Ms. Hester's False Imprisonment Claim

Finally, Ms. Hester asserts a claim for false imprisonment. Defendant moves for summary judgment on this claim based solely on the statutory merchants' defense, K.S.A. § 21-3424, which provides as follows:

> Any merchant, or a merchant's agent or employee, who has probable cause to believe that a person has actual possession of and has wrongfully taken, or is about to wrongfully take merchandise from a mercantile establishment, may detain such person on the premises or in the immediate vicinity thereof, in a reasonable manner and for a reasonable period of time for the purpose of investigating the circumstances of such possession. Such reasonable detention shall not constitute an arrest nor criminal restraint.

K.S.A. § 21-3424(c). This provision extends to civil actions for false imprisonment. *Alvarado v.*

---

[10]Defendant also moves for summary judgment on Ms. Hester's claim for punitive damages under section 1981, asserting that Ms. Hester cannot even show intentional conduct let alone willful or malicious conduct. Again, defendant asserts that Mr. Dye had reasonable grounds to detain Ms. Hester and reasonable grounds to monitor Ms. Hester's activities in the first instance. Defendant's argument, is based solely on defendant's version of the facts. As set forth above, genuine issues of fact exist with respect to the reasons for Mr. Dye's surveillance and detention of Ms. Hester. If the jury finds intentional discrimination, it can similarly find that defendant acted with malice or that its conduct was willful. Defendant's motion for summary judgment on Ms. Hester's claim for punitive damages is denied.

*City of Dodge City*, 238 Kan. 48 (1985); *Codner v. Toone*, 224 Kan. 531 (1978). The court readily concludes that summary judgment is not warranted on this claim, as factual issues exist concerning both whether Mr. Dye had "probable cause" to detain Ms. Hester and whether he detained Ms. Hester in a "reasonable manner."

Probable cause exists if the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been or is being committed. *Alvarado*, 238 Kan. at 63. Questions of material fact exist concerning whether Mr. Dye had probable cause to believe that Ms. Hester had committed an offense. By his own admission, Mr. Dye did not watch Ms. Hester go through the check out line; instead of verifying whether Ms. Hester was paying for the shoes, he was on the telephone contacting a manager. He did not witness Ms. Hester attempt to conceal any merchandise and, according to Ms. Hester, she carried the price tag for the shoes in open view at all times. In such circumstances, a jury must decide whether probable cause existed. *Compare id.* at 51, 62 (whether security officer had probable cause to stop suspected shoplifter was a jury question where officer admittedly did not check with cashier to determine what items the plaintiff had paid for) *with Hampton v. Dillard Dept. Stores, Inc.*, 985 F. Supp. 1055, 1061 (D. Kan. 1997) (summary judgment warranted based on merchants' defense where security officer viewed suspected shoplifter pushing a rolled-up cloth item into her jacket while in the fitting room; no factual issues on probable cause).

Similarly, a reasonable jury could conclude that Mr. Dye did not detain Ms. Hester in a "reasonable manner." Viewed in the light most favorable to Ms. Hester, Mr. Dye grabbed her arm

on three separate occasions. According to Ms. Hester, the first time that Mr. Dye grabbed her arm, he did so "pretty hard because he kind of jerked me back." Ms. Hester also testified that Mr. Dye repeatedly called her a "liar" and repeatedly accused her of shoplifting. The entire exchange between Mr. Dye and Ms. Hester occurred near the entrance to the store where Ms. Hester, who is well known in the community, was observed by several acquaintances. A jury, then, must decide whether Ms. Hester was detained in a reasonable manner. See Williams v. K-Mart Corp., 1992 WL 396339, at *5 (D. Kan. 1992) (where factual issues existed regarding words exchanged between security officers and suspected shoplifter, jury had to decide whether manner of detention was reasonable); *Alvarado*, 238 Kan. at 62 (whether suspected shoplifter was detained in a reasonable manner was for jury to decide where evidence suggested that officer held suspect's arm and forced her back inside the store).

For the foregoing reasons, summary judgment is denied on Ms. Hester's false imprisonment claim.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. 169) is granted in part and denied in part; defendant's motion to sever claims and for separate trials (doc. 81) is moot; defendant's motion to strike exhibits (doc. 173) is denied; and plaintiff's motion to supplement exhibits (doc. 177) is granted.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendant's motions to exclude the expert testimony of Kenneth Bolton Jr.; John Lombardi and Charles Stephenson (docs. 115,

117 and 119) remain under advisement.

**IT IS FURTHER ORDERED BY THE COURT THAT** the court will conduct a limine conference and motion hearing on Tuesday, September 27, 2005 at 10:30am. At that time, the court will take up defendant's motions to exclude the testimony of plaintiffs' experts as well as any motions in limine. All motions in limine shall be filed no later than September 16, 2005 and all responses thereto shall be filed no later than September 21, 2005.

**IT IS SO ORDERED.**

Dated this 22nd day of August, 2005, at Kansas City, Kansas.

s/ John W. Lungstrum<br>
John W. Lungstrum<br>
United States District Judge