IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**Brenda Hester,**

    **Plaintiff,**

v.                Case No. 03-2447-JWL

**Wal-Mart Stores, Inc.,**

    **Defendant.**

## MEMORANDUM & ORDER

Plaintiff Brenda Hester filed suit against defendant under 42 U.S.C. § 1981 alleging that defendant, on the basis of plaintiff's race, unlawfully denied her the right to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. Specifically, plaintiff alleged that Derrick Dye, one of defendant's loss prevention associates, wrongfully detained plaintiff as she exited defendant's store in Atchison, Kansas. Plaintiff also asserted a claim for false imprisonment under Kansas state law based on the same facts. In October 2005, plaintiff's claims were tried to a jury over the course of five days and the jury returned a verdict in favor of defendant on both claims. This matter is now before the court on plaintiff's amended motion for new trial, request for evidentiary hearing and request for ancillary discovery (doc. #228).[1] For the reasons set forth below, the motion is denied in its entirety.

---

[1] In filing her amended motion for new trial, plaintiff expressly withdrew her initial motion for new trial and, thus, the court moots that initial motion and addresses the merits of the amended motion for new trial only.

*Factual Background*

The court, in writing this memorandum and order, assumes familiarity with previous orders in this case which set forth in detail the factual background and procedural history. For the reader's convenience, however, the court briefly summarizes the facts underlying plaintiff's claims. On September 5, 2002, plaintiff was shopping in the Atchison Wal-Mart store with her teenage daughter and a toddler. At some point during her shopping trip, plaintiff stopped in the shoe department and began trying several pairs of shoes on the toddler. Ultimately, plaintiff placed two pairs of shoes in her shopping cart and, shortly thereafter, placed one of those pairs on the toddler to wear. Plaintiff testified that the price tag fell off the pair of shoes while the shoes were being placed on the toddler's feet and that she carried the price tag with her in full view at all times. During this time, Derrick Dye, one of Wal-Mart's loss prevention associates, was observing plaintiff and her conduct. According to defendant, Mr. Dye was watching plaintiff because she fit the description of a "known" shoplifter. Mr. Dye testified that plaintiff removed the price tag from the shoes and that he considered that type of conduct to be suspicious.

Mr. Dye followed plaintiff and her shopping party to the checkout aisle. Although Mr. Dye was standing very near plaintiff while she was checking out, he lost sight of plaintiff for a period of time while he was advising one of defendant's assistant managers of the "situation." According to defendant, Mr. Dye did not see plaintiff pay for the shoes that the toddler was wearing because he stepped out of the line for a few moments. Plaintiff asserts that Mr. Dye must have seen plaintiff pay for the shoes as he was standing right behind her in line as she was paying for the merchandise. Indeed, plaintiff paid for all of her merchandise, including the shoes that the toddler

2

was wearing. As plaintiff was leaving the store, Mr. Dye grabbed her by the arm and accused her of shoplifting. He asked her to return to the store and she refused, advising Mr. Dye that he was mistaken and that she had not stolen any merchandise. The encounter between Mr. Dye and plaintiff escalated and the police were contacted. Ultimately, it was confirmed that Ms. Hester had not stolen any merchandise.

*The Video Tape Issue*

In support of her motion for new trial, plaintiff asserts that Wal-Mart engaged in fraud or misrepresentation under Federal Rule of Civil Procedure 60(b)(3). The decision whether misconduct in a trial has been so egregious as to require a new trial is largely left to the discretion of the trial court. *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 962 (10th Cir. 1993). A new trial may be required only if the moving party shows that it was prejudiced by the misconduct. *Id*. (citations omitted). Here, plaintiff claims that Wal-Mart falsely represented to the court that the video surveillance tape of the cash register area where plaintiff paid for her merchandise and where, according to plaintiff, Mr. Dye witnessed her pay for the shoes (a tape which defendant destroyed without ever showing a copy to plaintiff) would have depicted only a "tight" shot of the register itself and would not have depicted the customer or the cashier. According to plaintiff, defendant's misrepresentation prevented plaintiff from fully and fairly presenting her case to the jury. As explained below, the court rejects plaintiff's argument and denies the relief requested by plaintiff.

By way of background, defendant, prior to trial, moved in limine for an order excluding any

3

reference to defendant's destruction of surveillance video from the customer service area. At the motion hearing, plaintiff also indicated that defendant had destroyed a tape from the cash register area where plaintiff had paid for her goods.[2] The court granted defendant's motion in a written order after retaining the motion under advisement for nearly two weeks. As explained in that order, the court declined to apply the spoliation doctrine (and declined to sanction defendant by instructing the jury that it could infer that production of the video tape would have been unfavorable to Wal-Mart) as plaintiff did not meet her burden of establishing that the video was relevant to her claims. *See Rowe v. Albertsons, Inc.*, 2004 WL 2252064, at *3 (10th Cir. Oct. 7, 2004) (party asserting presumption must show the evidence's potential relevance).[3] The court's decision was based in part on the statements of defendant's counsel at the motion hearing, who asserted that the video of the cash register was a "close-up shot" depicting only the cash register and drawer and that the tape simply would not depict the customer standing at the register or anyone else in the vicinity. The court's decision was also based on plaintiff's failure, in the face of the statements of defendant's counsel, to come forward with any evidence or argument to suggest that the representations of defendant's counsel were inaccurate. As the court noted in its order by way of example, plaintiff did not submit another Wal-Mart cash register surveillance tape

---

[2] It is the tape of the cash register area about which plaintiff now complains and she makes no claims at this point about the tape from the customer service area.

[3] Plaintiff states in her briefing that she is "at a loss to understand why she has the burden of proving what was on the videotape which was destroyed." Plaintiff, however, does not have to prove the contents of the tape. Rather, she has the burden to prove the relevance of the tape. To do so, she simply had to come forward with evidence (for example, another Wal-mart tape depicting a broader image) that the destroyed tape was relevant to her claims in that it would have depicted Ms. Hester and anyone else who was standing near her.

that depicted the customer or depicted a broader image than the image described by defendant's counsel.

Plaintiff now asserts that the court's ruling was induced by defendant's intentional misrepresentations and that, in fact, the cash register tape would not have depicted the tight shot described by defendant but a much wider shot sufficient to show Derrick Dye witnessing plaintiff's purchase of the shoes.[4] As an initial matter, it is significant that the representations made by defendant's counsel during the limine hearing were confirmed at trial by the testimony of Scott Matchell, defendant's District Loss Prevention Supervisor, who explained to the jury during cross-examination by plaintiff's counsel that the "register shot" is a "detailed shot of the actual transaction area for internal theft; they are not designed to capture an overall of customers and associates interacting, just primarily for internal theft issues of cash handling, that type of thing." When plaintiff's counsel asked Mr. Matchell whether the register shot would depict the customer for cases of credit card fraud or bad checks, Mr. Matchell replied that the shot would not depict the customer because it was "not that wide of a shot."

Plaintiff, however, contends that another portion of Mr. Matchell's testimony actually establishes that defendant (and, apparently, Mr. Matchell himself) lied to the court. Specifically, plaintiff directs the court to Mr. Matchell's testimony that there was not a one-to-one ratio of cameras to cash registers at the Atchison store and that there was "more than one" video camera

---

[4]As explained by plaintiff, the issue of whether Mr. Dye witnessed the purchase of the shoes is crucial to her case because if he actually observed the purchase and still detained plaintiff, then plaintiff easily establishes that Mr. Dye's conduct was motivated by plaintiff's race.

5

directed at each register. Plaintiff fails to explain how this testimony contradicts defendant's evidence that register shots were tight shots focused exclusively on the cash registers. Moreover, Mr. Matchell's testimony concerning the number of video cameras and the number of registers simply does not suggest that the register shots would depict anything other than the "detailed" shot described by Mr. Matchell. Suffice it to say, no evidence was presented at trial that undermined in any way defendant's evidence concerning the nature of the cash register shots depicted on surveillance video.

Plaintiff next contends that her expert Charles Stephenson reviewed after trial the "typical Wal-Mart surveillance bubble format" in two other Wal-Mart stores and determined that "there are both tights shots and broad area shots on the registers in the Wal-Mart checkout lane." Mr. Stephenson also avers that the tights shots would have depicted not only the cash register but also the customer and the cashier as per industry standard. There are two fatal problems with this argument. First, Mr. Stephenson's statements are purely speculative as they relate to this case. The fact that Mr. Stephenson observed surveillance bubbles in the register areas in two other Wal-Mart stores simply does not demonstrate that such a system existed in the Atchison store or that there were broad area shots on the registers in the Atchison store.[5] Even assuming the bubble

---

[5] The Atchison store where the events of this case occurred has since closed and a new Wal-Mart store has opened in Atchison. Another business has moved into the building previously occupied by Wal-Mart and plaintiff has submitted photographs depicting surveillance bubbles in the ceiling of the building. According to plaintiff, the ceiling does not appear to have been disturbed and, thus, the inference is that the bubbles were in place and in use when Wal-Mart occupied the building. However, there is no evidence as to the location of the cash registers in relation to the surveillance bubbles.

format existed in the Atchison store, Mr. Stephenson has no evidence to suggest that any of the cameras in those bubbles were directed at the cash registers. Moreover, even if industry standard is that a "tight" register shot will depict the entire transaction, plaintiff has no evidence that Wal-Mart's register shots were consistent with that standard and, indeed, the uncontroverted evidence at trial demonstrated that Wal-Mart's register shots did not depict the entire transaction.

Second, even assuming Mr. Stephenson is correct and that the Atchison store would have had broad area shots of the cash register and that any tight shots would have depicted the customer and the cashier, plaintiff's evidence on this issue comes far too late. To the court's knowledge, plaintiff did not raise any concerns whatsoever about the existence or destruction of any surveillance tape depicting the cash register area where plaintiff purchased her merchandise until the limine conference–just two weeks prior to trial. Until that time, plaintiff's concerns focused exclusively on the surveillance tape depicting the customer service area where plaintiff had returned her merchandise after the confrontation with Derrick Dye. Defendant's destruction of the customer service video tape was the subject of both defendant's motion in limine as well as plaintiff's earlier motion for sanctions. During the motion hearing on September 27, 2005, plaintiff for the first time expressed concerns to the court about defendant's destruction of the surveillance tape from the cash register area where plaintiff initially checked out.

Nonetheless, plaintiff had knowledge two weeks prior to trial that defendant's position was that register shots were tight shots depicting only the registers and that cash register video tapes from September 5, 2002 had been recycled because none of those tapes depicted plaintiff. During the two weeks leading up to trial (a time when the motion was retained under advisement), plaintiff

7

could have attempted to obtain evidence refuting defendant's representations by, for example, submitting the affidavit that Mr. Stephenson now submits. She did not do so and she did not request any discovery relating to that issue. The court's written order concerning the video tape was entered the day before trial. In that order, the court noted plaintiff's failure to come forward with evidence suggesting that the register shots depict a broader area than that described by defendant. Plaintiff proceeded to trial and did not request any relief whatsoever. Finally, at trial, plaintiff did not attempt to present evidence demonstrating that the register shot would have depicted something relevant to plaintiff's claims despite having the opportunity to do so in light of the court's decision to admit evidence that defendant had unilaterally determined that the cash register video tape did not depict anything relevant to plaintiff's case and had recycled the video.

Plaintiff offers no other evidence that she contends contradicts defendant's description of the cash register shots and she has wholly failed to persuade the court that defendant engaged in misconduct. But there is yet another reason why plaintiff's motion must be denied. The specific relief that plaintiff is requesting is a new trial in which the court instructs the jury that it may draw an adverse inference from defendant's destruction of the cash register surveillance video. Stated another way, plaintiff complains now that the court failed to give such an instruction. That argument, however, has been waived. While plaintiff prior to trial submitted a proposed adverse inference instruction, plaintiff never objected to the court's failure to include that instruction in the final instructions and never mentioned its proposed instruction at the instruction conference. *See Bennett v. Emerson Elec. Co.*, 2003 WL 21101486, at *4 (10th Cir. May 15, 2003) (defendant waived challenge to instruction where it failed to reference its proposed instruction

8

at conference and did not object to court's failure to include it); *accord Aspen Highlands Skiing Corp. v. Aspen Skiing Co.*, 738 F.2d 1509, 1515 (10th Cir. 1984) (offering a proposed instruction does not preserve challenge to the court's instructions absent a specific objection). The court's failure to give an adverse inference instruction, then, is examined only for plain error constituting a miscarriage of justice. *Maestas v. Lujan*, 351 F.3d 1001, 1011 (10th Cir. 2003); *Poindexter v. Atchison, Topeka & Santa Fe Railway Co.*, 168 F.3d 1228, 1232 (10th Cir. 1999).

No miscarriage of justice has occurred in this case. Although the court did not instruct the jury that it could draw an adverse inference from defendant's destruction of the tape, plaintiff presented evidence to the jury that defendant destroyed the tape without providing plaintiff a chance to view the tape and that defendant unilaterally determined that the tape was of no consequence. Moreover, to the extent plaintiff believes that the instruction would have caused the jury to conclude that the video showed Derrick Dye witness plaintiff pay for her merchandise, plaintiff presented other evidence on this point. Plaintiff's daughter testified that Mr. Dye was standing behind her mother in the checkout line and she never saw him leave the line at any time. Plaintiff, too, testified that Mr. Dye stood in line behind her. Plaintiff, then, was able to present her theory of the case to the jury and, thus, can show no prejudice from the court's failure to give an adverse inference instruction.

*The False Imprisonment Claim*

Finally, plaintiff asserts that the jury's verdict on plaintiff's false imprisonment claim is

against the weight of the evidence and that a new trial on the claim is warranted. "Where a new trial motion asserts that the jury verdict is not supported by the evidence, the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence." *Snyder v. City of Moab*, 354 F.3d 1179, 1187-88 (10th Cir. 2003) (quoting *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1284 (10th Cir. 1999)). The court considers the evidence in the light most favorable to the prevailing party, bearing in mind that "[t]he jury . . . has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact." *Id*. at 1188 (internal citation omitted) (quoting *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1226 (10th Cir. 2000)).

With respect to plaintiff's false imprisonment claim, the jury concluded that defendant proved by a preponderance of the evidence that it was entitled to the merchant's defense under Kansas law. The court explained the merchant's defense in Instruction 21 as follows:

> This instruction explains the "merchant's defense" as asserted by Wal-Mart. Any merchant or merchant's employee who reasonably believes that a person has actual possession of and has wrongfully taken or is about to wrongfully take merchandise from a mercantile establishment may detain such person on the premises or in the immediate vicinity in a reasonable manner and for a reasonable period of time for the purpose of investigating the circumstances of such possession. Reasonable detention under these circumstances does not constitute an arrest nor an unlawful restraint.
>
> A wrongful taking is the willful obtaining or exerting of unauthorized control over property of another with the intent to deprive the owner permanently or temporarily of the possession, use or benefit of that property.
>
> A reasonable belief exists if the facts and circumstances within the knowledge of a merchant or merchant's employee and of which the merchant or

>     merchant's employee has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that merchandise has been or is about to be wrongfully taken.

Instruction No. 21. In her motion for new trial, plaintiff asserts that the jury's conclusion that defendant was entitled to the merchant's defense is against the weight of the evidence because Scott Matchell, defendant's District Loss Prevention Supervisor, "admitted" at trial that Mr. Dye's detention of plaintiff was unreasonable and defendant never controverted or explained the admission. The court readily rejects this argument.

Plaintiff's motion is based on the following exchange between plaintiff's counsel and Mr. Matchell during the cross-examination of Mr. Matchell:

>     Counsel:    [W]hen the aqua socks went out the door on the infant's feet, there was no possible way [Mr. Dye] could have known if they were paid for if he hadn't been watching the cash register; correct?
>
>     Witness:    Correct.
>
>     Counsel:    And the apprehension at that point would have been unreasonable?
>
>     Witness:    Yeah. I mean, that was what we stated previously, sir, that it was he lost sight; therefore he did not fulfill the elements.

While Mr. Matchell agreed with plaintiff's counsel on cross-examination that Mr. Dye's detention of plaintiff was unreasonable, the admission was clearly made in the context of whether Mr. Dye "fulfilled the elements." As made clear by the testimony of numerous witnesses at trial, the "elements" referenced by Mr. Matchell were the four elements of Wal-Mart's internal policy regarding the apprehension of suspected shoplifters. One of the elements of the policy is that the loss prevention associate must maintain visual contact with the suspect from the point of

11

concealment to the point of apprehension. It is this element that Mr. Dye did not meet–a point that Wal-Mart readily admitted throughout trial.

Thus, the court, mindful of the strictures of the Seventh Amendment, must conclude that the jury, in considering Mr. Matchell's testimony in its context, understood Mr. Matchell to mean that Wal-Mart considered Mr. Dye's detention unreasonable because Mr. Dye did not satisfy each of the elements of Wal-Mart's policy. *See Palace Exploration Co. v. Petroleum Dev. Co.*, 316 F.3d 1110, 1119 (10th Cir. 2003) (under the Seventh Amendment, the court may not substitute its judgment of the facts for that of the jury; it may only grant a new trial if it concludes that the jury's verdict was so against the weight of the evidence as to be unsupportable). The court repeatedly cautioned the jury that evidence concerning Mr. Dye's violation of Wal-Mart's policy did not necessarily establish a violation of the law; the jury's apparent interpretation of Mr. Matchell's testimony and its verdict reveal that it understood and followed the court's instruction on this issue.

In sum, there is no basis to conclude that the jury's verdict on plaintiff's false imprisonment claim was "clearly, decidedly or overwhelmingly" against the weight of the evidence. Plaintiff's motion is denied.

**IT IS THEREFORE ORDERED THAT** plaintiff's amended motion for new trial, request for evidentiary hearing and request for ancillary discovery (doc. #228) is **denied** and plaintiff's motion for new trial (doc. #226) is **moot.**

**IT IS SO ORDERED.**

Dated this 16th day of December, 2005, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge
